Application to Proceed In Forma Pauperis
Attached

In The United States District Court For
The Middle District of Pennsylvania

Carlton Theodore Landis,          Case No.:
          Plaintiff

V.                                Complaint for Damages

David J. Ebbert, Ian Conners, J. Ray
Ormond, J. Konkle, Hugh Herwitz,
D. Langton, J. Savidge, M. Condit,         **FILED**
Steese, Hackenburg, Cressinger, and        HARRISBURG, PA
J. Sienkiewicz,                            FEB 1 0 2021
          Defendants.                      PER ___TBR___
                                           DEPUTY CLERK

## 1. Introduction

1. This is an action for damages by a federal inmate against federal officers of the Bureau of Prisons ("B.O.P."), who unlawfully (that is, without required due process procedures) revoked Plaintiff's recreation for nine (9) months in order to exact racially-motivated revenge on Plaintiff, an "African American", for lodging complaints ( and thus not staying in his rightful place as a "lowly negro") about a staff assault on Plaintiff

and staff malfeasance pertaining to retaliatory housing and recreational assignments issued by racist B.O.P. staff in order to provoke inmates hostile to Plaintiff's prior cooperation with federal authorities to threaten, harass, and/or assault Plaintiff.

2. This action is also against racially-biased supervisory B.O.P. Officials responsible for the conduct of the rank and file and for the supervisory officials' deliberate refusal to properly and adequately investigate Plaintiff's complaints, to take corrective action with respect to the rank-and-file Defendants whose racist, vicious propensities were notorious, to assure proper training and supervision of the rank and file Defendants, or to implement meaningful procedures to discourage lawless official conduct.

3. The Defendants' acts and omissions caused Plaintiff physical injury and severe mental and emotional distress.

4. All of the Defendants are being sued pursuant to Pennsylvania's Constitution and laws of tort claims and the 42nd chapter of the United States Code ("U.S.C."), Sections 1985(3) and 1986.

## II. Jurisdiction

5. This action is brought pursuant to Pennsylvania's Constitution

and laws of tort claims, as the Defendants acted outside their scope of employment; and 42 U.S.C. Sections 1985(3) and 1986, as the Defendants acted for their sole personal benefit.

6. This Court has subject matter jurisdiction of this action under:

a. 28 U.S.C. Section 1331, as this action arises under federal law (42 U.S.C. Sections 1985(3) and 1986) and Plaintiff seeks damages in excess of $10,000.

b. 28 U.S.C. Section 1332(a)(1), as Plaintiff is a citizen of Raleigh, North Carolina; the Defendants are citizens of Washington, D.C., and Pennsylvania; and Plaintiff seeks damages in excess of $75,000.

7. Nothing in this Complaint shall be construed as Plaintiff attempting to assert any claim pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), or the Federal Tort Claims Act, 28 U.S.C. 1346 (b).

## III. Parties

8. Plaintiff currently resides in Thomson, Illinois, where he is incarcerated in a federal prison ("AUSP-Thomson"). Nonetheless, Plaintiff is

a citizen of Raleigh, North Carolina, where he was charged and sentenced for violating federal law. Plaintiff was incarcerated in a federal prison ("USP-Lewisburg") in Lewisburg, Pennsylvania, at all times relevant to the allegations of this complaint. Plaintiff's current address is: Carlton Theodore Landis #24449-056, AUSP-Thomson, P.O. Box 1002, Thomson, Illinois 61285.

9. At all times relevant to this action, Defendant David J. Ebbert was the warden at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

10. At all relevant times to this action, Defendant Ian Conners was the Administrator National Inmate Appeals at B.O.P.'s Central office, the address of which is 320 First Street, N.W., Washington, D.C. 20534.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

11. At all relevant times to this action, Defendant J. Ray Ormond was the regional director at B.O.P.'s Northeast Regional Office, the address of which is U.S. Customs House – 7th Floor, 2nd and Chestnut Street, Philadelphia, PA. 19106.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

12. At all relevant times to this action, Defendant J. Konkle was the Captain at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

13. At all relevant times to this action, Defendant Hugh Hurwitz was the director of the Bureau of Prisons, the address of which is 320 First

Street, N.W., Washington, D.C. 20534.

a. At all relevant times, the Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

14. At all relevant times to this action, Defendant D. Langton was a correctional officer at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

15. At all relevant times to this action, Defendant J. Savidge was a correctional officer at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times to this action, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

16. At all relevant times to this action, Defendant M. Condit was a correctional officer at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

17. At all relevant times to this action, Defendant Steese was a correctional officer at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

18. At all relevant times to this action, Defendant Hachenburg was a Correctional officer at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

19. At all relevant times to this action, Defendant J. Sienkiewicz was a Correctional officer at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

20. At all relevant times to this action, Defendant Cressinger was a correction officer at USP-Lewisburg, the address of which is 2400 Robert F. Miller Drive, Lewisburg, PA. 17837.

a. At all relevant times, this Defendant was acting as an employee of the Bureau of Prisons.

b. This Defendant is being sued in his individual capacity.

## IV. Statement of Claim

21. On or about September 18, 2018, prison officials at USP-Lewisburg maliciously and sadistically changed Plaintiff's housing assignment in order to put Plaintiff in the cell with inmate Dayton Poke ("I/m Poke"), another "African American".

22. Prison officials calculated that by putting Plaintiff in the cell with I/m Poke, black-on-black violence would erupt between Plaintiff and I/m Poke.

23. Contrary to the prison officials' malicious and sadistic calculation, I/m Poke refused to allow Plaintiff to enter the cell with him because he knew that Plaintiff previously cooperated with federal authorities.

24. I/m Poke verbalized his discontent with Plaintiff's prior cooperation to Defendants Hackenburg and Sienkiewicz and other prison officials during the attempted cell-change.

25. Once the prison officials realized that they could not bully I/m Poke into permitting Plaintiff to enter his cell, Defendant Hackenburg escorted Plaintiff to an unoccupied cell.

26. En route to the cell, Defendant Hackenburg threatened to exact revenge on Plaintiff for complaining about the dangerous cell assignment with I/m Pohe.

27. On or about September 18, 2018, to October 4, 2018, Defendants Savidge, Hackenburg, and Steese maliciously and sadistically revoked Plaintiff's recreation in order to exact revenge on Plaintiff because of his race and his complaints about the dangerous cell assignment with I/M Pohe.

28. During this time, Plaintiff never violated any B.O.P. rules to warrant the revocation of his recreation.

29. Plaintiff lodged a complaint with Defendant Konkle about the unwarranted revocation of Plaintiff's recreation.

30. In order to cover up the unwarranted revocation of Plaintiff's recreation and to protect and assist Defendants Savidge, Hackenburg, and Steese, Defendant Konkle responded to the complaint by falsely claiming that Plaintiff's recreation was revoked because Plaintiff was "not properly prepared".

31. On or about October 5, 2018, Plaintiff was allowed to attend recreation.

10/29

32. While attending recreation, Plaintiff was threatened and harassed by inmates hostile to Plaintiff's prior cooperation with federal authorities.

33. When Plaintiff was being escorted back to his cell from recreation, a white prison official assaulted Plaintiff because Plaintiff informed **him** about being threatened and harassed by inmates while attending recreation.

34. From on or about October 8, 2018, to on or about June 15, 2019, Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz maliciously and sadistically revoked Plaintiff's recreation because of his complaints about prison officials maliciously and sadistically assigning Plaintiff dangerous cell and recreational assignments, about the unwarranted revocation of Plaintiff's recreation, and about a staff assault on Plaintiff.

35. The acts and omissions (as described above) of Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz were motivated by Plaintiff's race, as these Defendants did not subject white inmates to similar deprivations in any shape, form, or fashion when white inmates lodged any type of complaint.

36. During this time (see para. #34 above), Plaintiff never violated any B.O.P. rules to warrant the revocation of his recreation.

11/29

37. Plaintiff lodged several complaints with Defendants Ebbert, Conners, Ormond, Konkle, and Herwitz about the unwarranted revocation of his recreation.

38. In order to cover up the unwarranted revocation of Plaintiff's recreation and to protect and assist Defendants Langton, Javidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz; Defendants Ebbert, Conners, Ormond, Konkle, and Herwitz responded to the complaints by falsely claiming that Plaintiff's recreation was revoked because Plaintiff was "not properly prepared".

39. From on or about October 8, 2018, to on or about June 15, 2019, Defendants Ebbert, Conners, Ormond, Konkle, and Herwitz maliciously and sadistically refused to properly and adequately investigate Plaintiff's complaints in order to aid and abet the malicious and sadistic acts and omissions of their white counterparts (i.e., Defendants Langton, Javidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz).

40. The acts and omissions (as described above) of Defendants Ebbert, Conners, Ormond, Konkle, and Herwitz were motivated by Plaintiff's race, as these Defendants did regularly, properly, and adequately investigate similar complaints lodged by white inmates.

41. All of the Defendants believe(d) that black inmates such as Plaintiff

should not have the right to lodge such complaints (as mentioned above).

42. Because of their racist belief (see para.#41 above), all of the Defendants expected Plaintiff to remain reticent in the face of the malicious and sadistic acts and omissions of racist, white prison officials at USP" Lewisburg.

43. When Plaintiff refused to remain reticent, all of the Defendants conspired amongst each other to retaliate on Plaintiff by depriving him of recreation for nine (9) months.

44. Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz revoked Plaintiff's recreation for nine (9) months without ever issuing Plaintiff an incident report or allotting Plaintiff a disciplinary hearing.

45. Defendants Ebbert, Conners, Ormond, Honkle, and Herwitz knew that Plaintiff's recreation was revoked without being given an incident report and disciplinary hearing, yet these Defendants still approved of the acts and omissions of Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz.

46. All of the Defendants did conspire amongst each other to deprive

13/29

Plaintiff, based on his race, of equal protection of the laws as guaranteed by the First (Free Speech), Fifth (Due Process and Equal Protection), and Eighth (Deliberate Indifference) Amendments of the U.S. Constitution; the Civil Rights of Institutionalized Persons Act, 42 U.S.C. 1997, et. seq.; Due Process pursuant to 37 Pa. Code Section 93. 11(b); and the applicable provisions of the B.O.P.'s Code of Federal Regulations and Program Statements.[2]

47. Plaintiff was similarly situated with white inmates at USP-Lewisburg who (a) were allowed to attend recreation, (b) made complaints to staff, (c) cooperated with federal authorities, and/or (d) were not subjected to disciplinary sanctions for loss of recreation.

48. Plaintiff was treated differently than similarly situated white inmates at USP-Lewisburg.

49. The Code of Federal Regulations, entitled Inmate Discipline,[3] imposed a duty on the Defendants to provide Plaintiff with a notice (incident report) of charges lodged against him and the opportunity to present a defense against such charges before revoking Plaintiff's recreation.

50. The Code of Federal Regulations, entitled Administrative Remedy Program,[4] imposed a duty on the Defendants to properly and adequately investigate Plaintiff's complaints.

14/29

51. The applicable Code of Federal Regulations imposed a duty on the Defendants to treat Plaintiff equally irrespective of his race.

52. 18 U.S.C. 4042 (a)(2) and (3) imposed a duty on the Defendants to provide Plaintiff with recreational opportunities sufficient to maintain the well being of Plaintiff.

53. The Program Statement entitled Special Management Units ("SMU") imposed a duty on the Defendants to not revoke the recreation privilege of any SMU inmate without the permission of the Warden, who could only do so in rare circumstances for no longer than seven (7) days.

54. Defendant Ebbert never gave the other Defendants (Langton, Savidge, Condit, Steese, Hachenburg, Cressinger, and Sienkiewicz) permission to revoke Plaintiff's recreation pursuant to policy (see para. #53 above).

55. As demonstrated above, the Defendants (i.e., all of them) breached their duties (see para. #'s 49-53) to Plaintiff.

56. As demonstrated above, the Defendants (i.e., all of them) conspired amongst each other to deprive Plaintiff of due process and recreation for their sole personal benefit, not that of the sovereign United States.

15/29

57. As demonstrated above, the Defendants' (i.e., all of them) acts and omissions did not fall within the scope of employment as they were unprovoked, unnecessary, and unjustified by security concerns or penological goals.

58. The deprivations (as described above) to which Plaintiff and other black inmates were subjected was consistent with an institutionalized practice of USP-Lewisburg, which was known to and ratified by Defendants Ebbert, Conners, Herwitz, Ormond, and Konkle.

59. Despite knowledge of these institutionalized practices, Defendants Ebbert, Conners, Herwitz, Ormond, and Konkle at no time took any effective action to prevent each other or Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz from continuing to engage in the above-mentioned misconduct.

60. Defendants Ebbert, Conners, Herwitz, Ormond, and Konkle had prior notice of the vicious propensities of each other and Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

61. The refusal of Defendants Ebbert, Conners, Herwitz, Ormond, and

16/29

Konkle to properly train each other or Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz included the refusal to instruct them in applicable provisions of Pennsylvania law, U.S. statutory law, the Code of Federal Regulations, and Program Statements concerning prisoners' rights, and the Defendants' concomitant duty, as it pertained to recreational and disciplinary procedures and racial discrimination.

62. Defendants Ebbert, Conners, Herwitz, Ormond, and Konkle authorized, tolerated as institutionalized practices, and ratified the misconduct detailed above by:

a. Refusing to properly discipline, restrict, and control employees, including each other and Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz, known to be irresponsible in their dealing with Plaintiff and other black inmates at USP-Lewisburg.

b. Refusing to take adequate precautions in the hiring, promotion, and retention of USP-Lewisburg personnel, including specifically each other and Defendants Langton, Savidge, Condit, Steese, Hackenburg, Cressinger, and Sienkiewicz.

c. Refusing to properly and adequately investigate the complaints of black inmates such as Plaintiff via the B.O.P.'s Administrative Remedy Program,

but instead responding to these types of complaints with sham referals, bureaucratic power, and official denials calculated to mislead Plaintiff, black inmates, and the public.

63. As demonstrated above, the Defendants' conduct was extreme, outrageous, malicious, wanton, reckless, willful, oppressive, and strategic.

64. All of the Defendants agreed, via written and oral communication, with one another to revoke Plaintiff's recreation without due process or adherence to B.O.P. policy in order to injure Plaintiff due to his race.

## Injuries

65. Due to nine (9) months of undue inactivity provoked by the Defendants, Plaintiff suffered persistent headaches, sharp pains around eyes and head, an exacerbation of gastroesophagal reflux disease, dizziness, lethargy, anxiety, and depression.

66. The nine (9) months of undue inactivity provoked by the Defendants caused Plaintiff's blood pressure to spike, which led to Plaintiff being prescribed hypertension medications (Lisinopril, Losartan Potassium, and Amlodipine).

67. Plaintiff suffered severe and extreme mental and emotional distress due to the nine (9) months of undue inactivity provoked by the Defendants.

## Federal Theories of Recovery

68. As demonstrated above, the Defendants did conspire amongst each other to deprive Plaintiff of equal protection of the laws, which entitles Plaintiff to relief pursuant to 42 U.S.C. Section 1985 (3).

69. As demonstrated above, the Defendants knew of the unlawful conspiracy and declined to intervene to disrupt or dismantle the conspiracy, which entitles Plaintiff to relief pursuant to 42 U.S.C. Section 1986.

## State Law Theories of Recovery

70. On or about May 1, 2019, the Plaintiff caused a written verified notice of Claim to be filed with and served on the proper officers, agents, and employees of the State of Pennsylvania pursuant to the Claims statutes governing the cases.

71. Plaintiff's claim has been denied by operation of law because more than 90 days have elapsed since the service of the Notice of Claim, and

adjustment or payment of the Claim has been neglected or refused.

72. The acts and omissions alleged above constitute actionable torts under the laws of the State of Pennsylvania, including the tort of:

a. Negligence

b. Negligent Infliction of Emotional Distress

c. Intentional Infliction of Emotional Distress

d. Conspiracy

e. Concerted Tortious Conduct

f. Recklessness and Punitive Damages

g. Negligent Supervision or Training Resulting in Injury

h. Due Process

i. Racial Discrimination

## Relief

73. Plaintiff demands the following relief :

a. Nominal damages.

b. Compensatory damages in the amount of $50,000.

C. Punitive damages in the amount of $100,000.

d. An award of Plaintiff's costs of suit.

e. [Removed]

f. All other relief that is appropriate under the circumstances.

## V.   Exhaustion of Administrative Remedies

74. Plaintiff exhausted his administrative remedies in regard to the above-mentioned allegations while he was still incarcerated at USP-Lewisburg.

75. Plaintiff exhausted his administrative remedies on or about April

21/29

of 2019.

76. Plaintiff exhausted his administrative remedies by filing grievances concerning the above-mentioned allegations at USP-Lewisburg, the Northeast regional office of the B.O.P., and the Central office of the B.O.P.

77. In the grievances, Plaintiff claimed that the Defendants unlawfully revoked his recreation.

78. All of Plaintiff's grievances were denied or "referred".

## VI. Previous Lawsuits

79. Plaintiff has not had a case dismissed under the "three strikes" rule.

80. Plaintiff has filed a case with facts similar to those in this case:

a. Carlton Theodore Landis V. David J. Ebbert, Konkle, Conners, Hurwitz, Savidge, Mayer, Sienkiewicz, Steese, Hackenbury, Langton, and Condit.

b. Middle District of Pennsylvania

c. 19-CV-470

d. Christopher C. Conner

e. March 15, 2019

f. Case is still pending

g. Plaintiff's recreation claims were dismissed, as the Court declined to extend _Bivens_ to the context of recreation.

81. Plaintiff has filed other lawsuits concerning his conditions of confinement:

a. First Suit

   i. Carlton Theodore Landis v. M. Martin, Rogers, Singleton, Lott, Evans, Taylor, Crimaldi, Curry

   ii. Southern District of Mississippi

23/29

iii. 19-CV-177-DPJ-FKB

iv. Daniel P. Jordan

v. March 10, 2019 ing

vi. Case is not pending

vii. Case was dismissed; Plaintiff is appealing

b. Second Suit

i. Carlton Theodore Landis v. Lieutenant Wilson, Beacher, Saylor, Leanawiez, Dees, Mitterling, Ayers, Barth, Fabringer, Baussage, Knigh, Bureau of Prisons, Ormond, Conners, Konkle, Ebbert, Yargason, Nickel, Herwitz, Scott, Troutman

ii. Middle District of Pennsylvania

iii. 19-CV-1301

iv. Christopher C. Conner

24/29

v. July 20, 2019

vi. Case is pending

vii. Case is pending

C. Third Suit

i. Carlton Theodore Landis v. Lieutenant Murton, Erskine, Rivers, Maybury, Bureau of Prisons

ii. Northern District of Illinois

iii. 19-CV-50257

iv. Rebecca R. Pallmeyer

v. October 10, 2019

vi. Case is pending

vii. Case is pending

d. Fourth Suit

    i. Carlton Theodore Landis v. Warden Rivers, Doerer, Kirby

    ii. Northern District of Illinois

    iii. 20-cv-50290

    iv. Rebecca R. Pallmeyer

    v. June 10, 2020

    vi. Case is still pending

    vii. Case is pending

e. Fifth Suit

    i. Carlton Theodore Landis v. Federal Bureau of Prisons

    ii. District of Columbia

    iii. Unknown

iv. Unassigned

v. September 28, 2020

vi. Case is still pending

vii. Case is pending

## VII. Certification and Closing

82. Under Federal Rules of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint:

a. is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

b. is supported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law;

c. the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

27/29

d. the complaint otherwise complies with the requirements of Rule 11.

83. I agree to provide the Clerk's Office with any change to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Carlton T. Kandis  # 24449-056
AUSP-Thomson
P.O. Box 1002
Thomson, Illinois 61285

Dated: January 21, 2021

## Notes

1. And 28 U.S.C. Section 1367 (Supplemental Jurisdiction)

2. 28 CFR 541.2 and 541.10-23 ("Inmate Discipline Program"); Program Statement 5270.09, Appendix C ("Inmate Discipline Program"); 28 CFR 551.90 ("Non-Discrimination Towards Inmates").

28/29

3. 28 CFR 541.2 and 541.10-23

4. 28 CFR 542.10, et seq.



INMATE NAME Carlton Theodore Landis
REGISTER NUMBER 24449-076
ADMINISTRATIVE UNITED STATES PENITENTIARY
P.O. BOX 1002
THOMSON, IL 61285

Clerk, U.S. District Court
Middle District of Pennsylvania
228 Walnut Street
P.O. Box 983
Harrisburg, PA. 17108

CERTIFIED MAIL

7020 0090 0000 2275 9517

U.S. POSTAGE PAID
FCM LETTER
THOMSON, IL
61285
JAN 26, 21
AMOUNT
$0.00

USPS FEDERAL STATION
FEB 2021
HARRISBURG PA 17108

Legal Mail